UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FRANCISCO J MOLINA,

                              Plaintiff,

   -against-                                 1:08-CV-1213 (LEK/RFT)

STATE OF NEW YORK; NYS OFFICE OF
CHILDREN AND FAMILY SERVICES;
NYS DIVISION FOR YOUTH; LOUIS GOSSETT
JR. RESIDENTIAL CENTER; JOHN A
JOHNSON, Commissioner of the NYS Division for
Youth; JOSEPH IMPICCIATORE, Director of the
Louis Gossett Jr. Residential Center; CYRIL
STEPHENS, Youth Detention Aide at the Louis
Gossett Jr. Residential Center; ARTHUR MYERS,
Youth Detention Aide at the Louis Gossett Jr.
Residential Center; SCOTT PELKY, Youth
Detention Aide at the Louis Gossett Jr. Residential
Center; and "JOHN and JANE DOES," the names
being fictitious and intended to be the individual(s)
who is/was/were employed at the Louis Gossett Jr.
Residential Center and who caused injury to the
Plaintiff

                              Defendants.

## MEMORANDUM-DECISION AND ORDER[1]

      This action was filed by Plaintiff, Francisco J. Molina ("Plaintiff") on December 2, 2008 in the Eastern District of New York. By stipulation of the parties, the action was transferred to the Northern District of New York on April 21, 2009. Dkt. Nos. 7-8. Plaintiff's Complaint (Dkt. No. 1) alleges, pursuant to 42 U.S.C. § 1983, violations of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as claims of negligence and assault and battery.

---

      [1]For printed publication in the Federal Reporter

1

**I.     BACKGROUND**

On December 4, 2006, Plaintiff was allegedly violently assaulted by Defendants Cyril Stephens ("Stephens"), Arthur Myers ("Myers"), Scott Pelky ("Pelky"), and John and Jane Does (collectively, "the Detention Aides"), Detention Aides at the Louis Gossett Jr. Residential Center ("Gossett"), a youth correctional facility operated and maintained by the State of New York Office of Children and Family Services ("OCFS").  Compl. ¶¶ 7-9.  At the time, Plaintiff was 17 years old and in the custody of Gossett.  Id.  Plaintiff claims that the assault occurred after he failed to immediately respond to a Detention Aide's command to stop performing push-ups in the Gossett gym.  Plaintiff alleges that the Detention Aides grabbed him, shoved him against a wall, placed him in a choke hold, twisted his arm behind his back and pushed on it with the full weight of their bodies until it "popped."  Allegedly, during the assault, Plaintiff begged for relief, but the Detention Aides did not stop until they realized that they had broken Plaintiff's arm.  Id. ¶¶ 11-16.  Plaintiff alleges that, despite the obviously severe injury he had sustained, he was not provided with immediate medical care.  Id. ¶¶ 19, 22.  Plaintiff alleges that the assault left him with a severe fracture requiring surgery, Radial Nerve Palsy, and other physical and mental injuries from which he remains disabled and which will require ongoing medical care with associated costs.  Id. ¶¶ 23-24.

OCFS provides for a grievance procedure available to any resident wishing to formally complain about any aspect of their residency in an OCFS facility, including circumstances of a physical restraint.  Preston Aff. (Dkt. 11-2) ¶ 2.  Plaintiff alleges that, immediately after the incident, he filed a "Grievance Form" but received no response from anyone at Gossett.  Pl.'s Aff. (Dkt. No. 23-4) ¶ 4.  Gossett's Grievance Log shows no record of any grievance being filed.  Preston Aff. ¶ 3.  Despite there being no record of a formal complaint, OCFS sent Plaintiff's father a letter noting a

2

report made to the New York State Child Abuse and Maltreatment Register dated December 5, 2006 that named Plaintiff as the subject of an inquiry.  Dkt. No. 23-3.  That report notes allegations of inappropriate custodial conduct resulting in Plaintiff's fracture.  Id.  It also includes the following narrative: "On December 4, 2006 . . . Cyril (Duty Officer) restraint Francisco (age 17) after the child was behaving inappropriately . . . . At some point during the incident the child sustained a broken right arm.  There is reason to believe that excessive force was being used . . ."  Id.  Plaintiff contends that this Report is evidence that he did report the incident.  Pl.'s Aff. ¶ 5.

Plaintiff alleges that Defendants State of New York, OCFS, Division of Youth ("DOY"), Gossett, Joseph Impicciatore ("Impicciatore"), John Johnson ("Johnson"), and the Detention Aides (collectively, "Defendants") failed to provide him with "safe and secure custody consistent with good and accepted practices in the field of youthful detention."  Compl. ¶ 25.  Plaintiff claims Defendants subjected him to wanton and unnecessary infliction of pain and emotional distress, unreasonable excessive force, and unsafe restraint holds; provided inadequate training of the Detention Aides; and inadequately responded to Plaintiff's injuries.  Id.

Plaintiff claims that the above actions and omissions demonstrated deliberate indifference and/or willful neglect and resulted in the violation of his right to be free from cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.  Id ¶¶ 44-45, 63.  He further alleges that Defendants' actions and failure to provide him with safe custodial care and adequate medical care deprived him of his liberty without due process as guaranteed by the Fifth and Fourteenth Amendments.  Id ¶¶ 50, 67.  Plaintiff further claims that Defendants' failure to provide him with adequate protection from retaliation, safe custody, and immediate medical care deprived him of his right to free speech under the First and Fourteenth Amendments.  ¶¶75-76.  Plaintiff also

alleges that Defendants' conduct constituted an unreasonable search and seizure in violation of his rights under the Fourth and Fourteen Amendments.  ¶¶ 79-80.  Finally, Plaintiff alleges negligence and/or gross negligence and assault and battery on the part of Defendants.  Id ¶¶ 57, 71.  He seeks compensatory and punitive damages for his injuries and alleged civil rights violations.

Defendants filed a Motion for summary judgment for failure to exhaust remedies, or, in the alternative, Motion for summary judgment with regard to Defendant Impicciatore and Motion to dismiss (a) all Plaintiff's claims in their entirety against Defendants State of New York, OCFS, DOY, Gossett, Johnson and Impicciatore; and (b) Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment claims against all Defendants; and (c) Plaintiff's Fifth Cause of Action alleging deliberate indifference or willful neglect in violation of the Eighth Amendment against Defendants Stephens, Myers, and Pelky.  (Dkt. No. 11).

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  A court must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing the judgment.'"  Brown v. Henderson, 257 F.2d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). The nonmoving party "may not rely merely on allegations or denials in its own pleadings" and bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment. FED. R. CIV. P. 56(e)(2); see Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

When considering a motion to dismiss under 12(b)(6), a district court must accept the factual allegations made by the non-moving party as true and "draw all inferences in the light most favorable" to the non-moving party. In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). "The movant's burden is very substantial, as 'the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" Log On America, Inc. v. Promethean Asset Mgmt. L.L.C., 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotation and citations omitted)). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___U.S. ___, 29 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Next, if plaintiff provides well-pleaded factual allegations, "a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement to relief." Id.

### III. DISCUSSION

#### A. Exhaustion of Remedies

Defendants' move for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). Defs.' Mot. to Dismiss (Dkt. No. 11). At summary judgment, Defendants have the burden of proving failure to exhaust as an affirmative defense. Lewis ex rel. Lewis v. Gagne, 281 F. Supp. 2d 429 (N.D.N.Y. 2003) (citing Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir.1999)).

The PLRA requires exhaustion of administrative remedies before a prisoner confined in any correctional facility may bring any action with respect to prison conditions under federal law. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516 (2002). This exhaustion requirement applies equally to juveniles confined in correctional facilities. See 42 U.S.C. § 1997e(h) ("the term "prisoner" means *any person* incarcerated or detained in any facility" (emphasis added)); Lewis, 281 F. Supp. 2d 429. Failure to exhaust is excusable in only very limited circumstances. One recognized exception to the exhaustion requirement occurs where special circumstances justify the plaintiff's failure. See Giano v. Goord, 380 F.3d 670 (2d Cir. 2004); Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2003); Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004). Special circumstances justifying a failure to exhaust may exist where a plaintiff "asserts that his attempt to exhaust available administrative remedies . . . comported with [the applicable] procedural rules, or, at a minimum, reflected a reasonable interpretation of those regulations." Hemphill, 380 F3d. at 689.

The precise formal grievance procedure employed at Gossett has not been brought to the Court's attention, and therefore, the Court is unable to determine the relative ease or difficulty

6

associated with understanding and complying with those formal requirements. Absent this display, and given the contradictory evidence as to whether a formal grievance was filed, and with due consideration to Plaintiff's juvenile and *pro se* status at the time of the incident, the Court cannot say, as a matter of law, that Plaintiff failed to exhaust administrative remedies, or, if he did, that he was not justified in failing to do so. Summary judgment on that basis is, therefore, denied.

### B. Claims against Joseph Impicciatore and New York State Division of Youth

Plaintiff's Complaint names Joseph Impicciatore as a party and describes him as the Director of Gossett at all relevant times, and as such, the person "responsible for the supervision and administration of the division, including but not limited to the provision of safe custody and medical services." Compl. ¶ 5. Plaintiff's allegations all relate to the incident occurring December 4, 2006. Impicciatore's tenure at Gossett ended on April 7, 2004, at which point he took a different position with OCFS having no duties or responsibilities related to the events alleged by Plaintiff. Impicciatore Aff. (Dkt. No. 11-3) ¶¶ 2-4. Plaintiff does not deny this. Summary judgment in favor of Joseph Impicciatore is, therefore, granted.

Plaintiff also names the New York State Division of Youth in his Complaint. The DOY, however, was effectively abolished and its functions transferred to OCFS in 1997, years prior to the events giving rise to Plaintiff's suit. See 1997 N.Y. Sess. Laws Ch. 436 § 122. Thus, Plaintiff's claims against DOY are dismissed.

### C. Claims Barred by the Eleventh Amendment

Section 1983 provides in part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

It is well settled that the Eleventh Amendment bars suits against a state or its agencies unless the state consents or federal legislation overrides the state's sovereign immunity. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70 (1989); McGinty v. New York, 251 F.3d 84 (2d Cir. 2001). Further, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will, 491 U.S. at 71. Therefore, Plaintiff's claims against the State of New York and OCFS, a state agency, are dismissed. For the same reason, Plaintiff's claims against Gossett, a facility operated by OCFS and having no separate existence apart from that agency, are dismissed.

Additionally, § 1983 actions seeking monetary damages against state officials acting in their official capacity are prohibited, as such officials are not considered "persons" under the statute. Id.; Huminski v. Corsones, 396 F.3d 53, 70 (2d Cir. 2005) Accordingly, Plaintiff's constitutional claims against Defendants acting in their official capacity are dismissed.

**D.    Supervisory Responsibility under Section 1983**

The doctrine of *respondeat superior* is inapplicable to actions filed pursuant to § 1983 because liability under that statue may be imposed only on officials who are personally involved in causing a violation. Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir. 1973); Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). A supervisor may be liable, however, if he shows "deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury." Poe v. Leonard, 282 F.3d 123 (2d Cir. 2002).

Plaintiff's constitutional claims against Johnson do not suggest any personal involvement in

8

the assault or alleged constitutional violations.² Plaintiff alleges, in conclusory fashion, that Johnson's role in fashioning inadequate procedures and training to Detention Aides amounted to deliberate indifference. Compl. ¶¶ 25-26. No factual support is given for this allegation. Throughout his Complaint, Plaintiff seeks to impose liability on Johnson based on the actions by the Detention Aides. Having alleged no facts suggesting personal involvement by Johnson or supporting allegations of Johnson's deliberate indifference or gross negligence as the cause of his injury, Plaintiff's first, second, fifth, eighth, and ninth claims against Johnson are dismissed.

### E. Plaintiff's Constitutional Claims

Based on the alleged assault and subsequent alleged failure to adequately provide medical aid, Plaintiff alleges violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

Plaintiff's Eighth Cause of Action alleges that his First Amendment rights were violated insofar as Defendants' actions were made in retaliation of staff abuse. Compl. ¶ 76. To state a claim alleging retaliation in violation of the First Amendment, Plaintiff must show: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) overruled on other grounds; Gill v. Pidlpchak, 389 F.3d 379, 380 (2d Cir. 2004). Plaintiff's Complaint provides no facts sufficient to support any of these elements. His eighth claim is, therefore, dismissed.

Plaintiff's Ninth Cause of Action alleges that the assault constituted an "unlawful seizure" in violation of his Fourth Amendment rights. Compl. ¶ 79. In the prison context as elsewhere, "[t]he

---

²The same holds true for Plaintiff's allegations against Impicciatore, already dismissed for other reasons.

9

applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." Hudson v. Palmer, 468 U.S. 517, 524 (1984) (internal quotations omitted). Thus, Plaintiff must have had a legitimate and justifiable expectation to be free from bodily seizure while in Gossett for his Fourth Amendment claim to survive. Plaintiff's Complaint fails to show such an expectation is reasonable under the circumstances. His ninth claim is dismissed.

Plaintiff's Second and Sixth Causes of Action allege violations of his Fifth and Fourteenth Amendment rights. These claims allege, respectively, that Defendants' use of excessive force and failure to provide safe custodial care and their failure to secure adequate medical care deprived Plaintiff of liberty without due process of law. Compl. ¶¶ 48-50, 67. Plaintiff's claim is against state officials, not the federal government. Therefore, his appeal to rights secured under the Fifth Amendment is misplaced and dismissed.

Plaintiff correctly asserts the Fourteenth Amendment as the source of his due process rights against the state. Compl. ¶¶ 50, 67. The Supreme Court has found that procedural due process protections are applicable to prison confinement only when an inmate is subjected to "atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin v. Conner, 512 U.S. 472, 484 (1995). Additionally, when bringing a § 1983 claim alleging violation of a liberty interest due to excessive force, the Supreme Court has admonished courts to isolate the constitutional violation with which the defendant is charged and judge the claim against that constitutional standard. Graham v. Connor, 490 U.S. 386, 394 (1989). The constitutional violation typically giving rise to the claim is typically either the Fourth or Eighth Amendment, both of which are claims Plaintiff advances in separate causes of action. Id. The Second Circuit has found that, after

Graham, while the "Fourteenth Amendment substantive due process survived as a source of a federal right to be free from excessive force[,]" it does so only in the "relatively unusual excessive force cases falling beyond the ambit of the Fourth and Eighth Amendments[,]" . . . " and [only] *in the non-seizure, non-prisoner context*." Rodriguez v. Phillips, 66 F.3d 470, 477 (2d Cir. 1995) (emphasis added); see also Blake v. Base, No. 90-CV-0008, 1998 WL 642621 at *11 n.22 (N.D.N.Y. Sept. 14, 1998). Plaintiff's Second and Eighth Causes of Action are, therefore, not properly construed as a substantive due process violation, but must be analyzed under the Fourth and Eighth Amendments. Viewed from this perspective, these claims substantially mirror Plaintiff's First, Fifth, and Ninth Causes of Action. As allegations of substantive due process violations, they are dismissed.

Plaintiff's First and Fifth Causes of action allege violations of the Eighth and Fourteenth Amendments. These alleged violations stem from the use of excessive force (first claim) and failure to provide adequate medical attention (fifth claim). The Eighth Amendment's prohibition against cruel and unusual punishment applies to the states through the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. VIII; Robinson v. California, 370 U.S. 660, 666 (1962). Thus, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989).

The assessment of Eighth Amendment claims requires the Court to consider both objective and subjective elements. Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999). To meet the objective requirement, Plaintiff must show that the injury was serious enough to warrant protection. Id. The subjective element requires a defendant to have the necessary level of culpability, evidenced

by actions demonstrating "wantonness."  Id. (citing Wilson v. Seiter, 501 U.S. 294, 298-99 (1991)).  Such "wantonness" may be demonstrated where there is deliberate infliction of punishment, as opposed to ordinary lack of due care.  Id. (citing Farmer v. Brennan, 511 U.S. 825, 842 (1970)).  Where, as here, excessive force is alleged, the "wantonness" inquiry turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 7 (1992).  If the force was maliciously or sadistically inflicted, significant injury is not required for an Eight Amendment violation to be found.  Id. at 8.  Under this standard, Plaintiff has sufficiently alleged facts to support a plausible Eighth Amendment claim with regard to his First Cause of Action.

Plaintiff's Fifth Cause of Action alleges that Defendants' deliberate indifference or willful neglect in attending to Plaintiff's injuries constituted cruel and unusual punishment.  Compl. ¶ 63.  "[D]eliberate indifference to serious medical needs" is sufficient to support an Eighth Amendment claim, Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Farmer, 511 U.S. at 837).  A plaintiff must allege this culpability to assert a claim entitled to relief.  Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003).

Plaintiff's Complaint sufficiently alleges a serious harm in its description of Plaintiff's injuries.  It alleges that Defendants' deliberate indifference is demonstrated by his having to wait approximately 15 hours before being diagnosed and scheduled for surgery despite the obviousness of his injuries and his own pleading for assistance.  Compl. 63-65; Dkt.23-3.  Plaintiff further

alleges that there was no basis for the force used or delay in treatment other than his refusal to immediately obey a Detention Aide's command.  The Supreme Court has held that "intentionally denying or delaying access to medical care" for a serious medical condition can constitute deliberate indifference.  Estelle, 429 U.S. at 104-05; Archer v. Dutcher, 733 F.2d 14, 16 (2d Cir. 1984) (five hour delay in medical treatment, if meant to punish inmate for past disciplinary problems would be a violation).  Where, as here, Plaintiff has alleged sufficient facts to suggest that medical treatment of legitimate injuries was delayed to punish him, he has asserted a plausible claim for relief.  Plaintiff may, therefore, proceed with his fifth claim.                                    .

## IV.     CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motion for summary judgment for failure to exhaust administrative remedies (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that Defendants' Motion for summary judgment in favor of Joseph Impicciatore (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 11) is **GRANTED** in part and **DENIED** in part, and it is further;

**ORDERED**, that all Plaintiff's claims are **DISMISSED** in their entirety as to Defendants State of New York, Office of Children and Family Services; New York State Division of Youth; Louis Gossett Jr. Residential Center; and Joseph Impicciatore; and it is further

**ORDERED**, that Plaintiff's Second, Sixth, Eighth, and Ninth Causes of Action are **DISMISSED** in their entirety; and it is further

**ORDERED**, that Plaintiff's First and Fifth Causes of Action are **DISMISSED** in their entirety as to Defendant John Johnson; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:   March 03, 2010
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge